## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| **RENEE L McCRAY** . | * | |
| **Plaintiff** | * | |
| **v.** | * | Civil Action No. 8:18-cv-03491-GLS |
| **SAMUEL I WHITE PC.** *et al.* | * | |
| **Defendants** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS COMPLAINT

COMES NOW, the Defendant, SAMUEL I WHITE PC. ("White Law Firm") and files its Memorandum in Support of its Motion, made pursuant to Fed. R. Civ. P. Rule ("FRCP") 12(b)(6) and Rule 56, to dismiss all claims against all parties, or in the alternative to enter summary judgment with respect to all claims, against all parties asserted in the "Verified Complaint for Violations of the Fair Debt Collection Practices Act (FDCPA) and for Injunctive Relief" (the "Complaint"), and in support of the motion, states the following:

### I.  INTRODUCTION AND BACKGROUND

This is Renee L. McCray's ("McCray") fourth (4th) Action in this Court on the same set of facts, involving the same loan transaction and resulting foreclosure action,  with claim overtones seeking to collaterally attack the State foreclosure action docketed in the Maryland Circuit Court for Baltimore City (see Fn.2).[1]

---

[1] **McCray I** McCray v. Fed. Home Loan Mortg. Corp.et al , No. (formerly 13-cv-1518-GLR) now 13-cv-1518-ADC, which case is present before Magistrate Judge A. David Copperthite on a Motion for Summary Judgment. **McCray II** GLR-16-cv-934,  was consolidated into McCray I and the majority  of the case was dismissed on summary judgment. **McCray III** Driscoll v. McCray, No. GLR-16-cv-1791(D.Md. removed June 2, 2016). This is

Originally on May 23, 2013, McCray, filed a *pro se* Complaint against Federal Home Loan Mortgage Corporation (Freddie Mac), and Wells Fargo Bank NA (Wells Fargo), as well as the White Law Firm, i.e., the law firm and attorneys employed by the firm, who are the Substitute Trustees appointed by Wells Fargo in the foreclosure of a residential property securing McCray's mortgage loan.[2]  The present 4th action Complaint retains claims against two (2) of the named Substitute Trustees in the foreclosure action (Defendants  John E. Driscoll III and Deena Reynolds), the person attending the November 2018 foreclosure sale and who is also named on the foreclosure bond (Arnold Hillman), counsel who sent to the Circuit Court amended post foreclosure sale documents and who is also named on the foreclosure bond (Sara Turner) and counsel for the White Law Firm and the Substitute trustees in all the actions who is not a Substitute Trustee but merely these parties defense counsel (Robert Hillman).

Before any defendant filed a responsive pleading in the Original Case (McCray I ADC-1:13-cv-1518, See McCray I Docket Exhibit 1), on June 13, 2013, McCray filed a five count Amended Complaint.  The Amended Complaint asserts violations of various federal (Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 et. seq, Truth in Lending Act (TILA), 15 U.S.C. §1641(g); and Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. §2601 et seq) and Maryland consumer protection statutes (Maryland Consumer Debt Collection Act (MCDCA), Md. Code Ann. Com. Law §14-201 and  Maryland Consumer Protection Act (MCPA), Md. Code Ann. Com. Law §13-101, et seq.).

This Court (Hon G.L. Russell), in McCray I, on January 24, 2014, issued an Order (Exhibit 1-McCray I ECF 44) and Memorandum Opinion (Exhibit 1-McCray I ECF 43)

---

the State Foreclosure Case which McCray removed . On March 20, 2017, the Court remanded that case for lack of subject matter jurisdiction (Case. ECF No. 77).

[2]  The foreclosure matter (the "Foreclosure Action") is pending in the Maryland Circuit Court for Baltimore City, Case No. 24013000528. The Substitute Trustees in that matter are John E. Driscoll, III, Robert E. Frazier, Jana M. Gantt, Laura D. Harris, Kimberly Lane and Deena L. Reynolds.  All are named as defendants in this lawsuit and alleged to be attorneys at the law firm of Samuel I. White, P.C. Amended Complaint, ¶¶6(d) through 6(i).

dismissing Freddie Mac, Wells Fargo and the SIWPC Defendants from McCray's FDCPA claim and dismissed the TILA claim altogether. The Court further dismissed McCray's RESPA claim to the extent that McCray was asserting that a "Notice of Default" dated September 14, 2011 constituted a Qualified Written Request under RESPA and to the extent that McCray was seeking damages for emotional distress (being the same as those sought under her FDCPA claim violations) for the alleged RESPA violations.

McCray then noted another appeal[3] to the Fourth Circuit (Exhibit 1-McCray I ECF 82). In that decision (Exhibit 1-McCray I ECF 86), the Court affirmed the dismissal as of the action against Wells Fargo and Freddie Mac in essence asserting that Wells Fargo as servicer was vested with a beneficial interest as servicer to perform the foreclosure and as to the claim against Freddie Mac on the ground that McCray failed to "allege any sale, transfer, or assignment of her loan to Freddie Mac after Congress amended TILA to require notice." The Court concluded alternatively that because Wells Fargo informed McCray by a letter dated October 25, 2011, that Freddie Mac was the "investor" on the loan, McCray had notice of her claim as of that time and was therefore barred by the statute's one-year limitations period, see 15 U.S.C. § 1640(e), since she did not file the claim until May 2013.

As to the SIWPC Defendants named (collectively referred to as the White Law Firm and the individually named attorneys who happen to the then named Substitute Trustees, thought they were not sued in that capacity), the Court reversed the dismissal of the sole issue on the FDCPA claim holding simply that McCray's complaint adequately alleged that the White Law Firm and the Substitute Trustees were deemed "debt collectors" and that their actions in pursuing foreclosure constituted a step in collecting debt and thus debt collection activity that is regulated

---

[3] McCray's prior appeal was dismissed as being interlocutory in nature. The second appeal was McCray v. Federal Home Loan Mortgage, Case no. 15-1444 and subsequently reported in 839 F.3d 354 (4th Cir. 2016).

3

by the FDCPA. The Court held that McCray plead sufficient facts to leap frog the Motion to Dismiss.

After the remand fro the Appellate Court, the case proceeded to discovery and presently is in a posture before Magistrate Judge A. David Copperthite on Motions for Summary Judgment[4].

For the most part, this Complaint like McCray's prior Complaints in McCray I and II contains nothing more than a recitation of the legal elements of the various statutory claims followed by conclusory assertions that the statutes were violated. It does not delineate who she claims did what and when and generalizes that all the Defendants she has named have acted uniformly as to each of the violations. Obviously for the claims to be valid, McCray must be more specific as to the who, when and what factors. Again, the gist of this Complaint is that the Defendants, through the use of "false, deceptive and misleading means" are attempting to collect a debt by prosecution of the foreclosure.  Compl. ¶¶ 31and 53.  McCray alleges that she has sought "validation of the alleged debt" and that the "collection practices" of the Defendants are illegal because they are in pursuit of a "consumer debt without proper validation" and thereafter after McCray sent her cease and desist notice, the Defendants (without any delineation of who the notice was sent to or which of the Defendants who acted) still pursued the foreclosure sale of November 15, 2018. Compl. ¶21.  As discussed below, the Complaint should be dismissed because it fails to plausibly state any cause of action upon which relief can be granted. In the alternative, there is no genuine dispute of material fact and the Defendants are all entitled to judgments as a matter of law.

## II.    STATEMENT OF FACTS

---

[4] The parties consent to the matter being handled by a Magistrate Judge  Exhibit 1- McCray I- ECF 127

The matter arises out of a default of a refinance loan to McCray which was secured by a deed of trust encumbering the real property commonly known as 109 N. Edgewood Street, Baltimore MD 21229 (the "Property"). McCray refinanced on October 7, 2005 the deed of trust previously recorded at Liber 4414 folio 212, paying off the prior loan of $46,373.01. The original beneficiary of the deed of trust was American Home Mortgage, who then transferred the loan to Freddie Mac, who in turn retained Wells Fargo to service the loan.

After making payments to Wells Fargo for some 6 years on the loan, in 2011 McCray began making demands for loan information from Wells Fargo the servicer of the loan (she had been paying the servicer up to this time) concerning the amounts due, the names of the secured party, and when the loan was acquired, which Wells Fargo repeatedly responded to.

McCray defaulted on the loan on May 2, 2012. When McCray failed to cure her payment default, a breach notice was sent to McCray by Wells Fargo and the loan was accelerated. The loan was subsequently referred to the Defendant White Law Firm to undertake foreclosure proceedings. In anticipation of filing a foreclosure action, a fair debt letter dated September 28, 2012 and the Notice of Intent to Foreclose ("NOI") was sent to McCray on October 2 2012. At this juncture McCray made a debt dispute which is the basis for the prior federal litigation in McCray I and II which were eventually consolidated and for which a Motion for Summary Judgment is pending by the named defendants.

McCray then re-initiated the same written dialogue she previously had with Wells Fargo re-demanding verification of the debt on October 6, 2012. McCray, contrary to the allegations of the SIWPC Defendants, maintains that she did not receive a response to her debt dispute, much like she had previously done with Wells Fargo, where she made repeated demands suggesting that she had not gotten the appropriate response she demanded. Once again, the SIWPC

Defendants maintain that they did respond. Again, this is the foundation McCray raises in this case and is the central focus of the other pending federal actions.

### A.THE PENDING STATE LITIGATION

The foreclosure action which was originally filed by the Substitute Trustees on February 12, 2013 in the Circuit Court for Baltimore City, Maryland. John E. Driscoll III et al Substitute Trustees v Renee L. McCray Civil Action No 24-O-13000-528 (the "State Foreclosure Action"). See Exhibit 2 State Foreclosure Action Summary of Proceedings and Docket Entries.

It is undisputed that McCray was in default under her payment obligations and she did not dispute the allegations set forth in the NOI that was sent to her 45 days before the foreclosure action was docketed.

Her personal obligation to the debt was discharged by her later filed bankruptcy.

After the Order to Docket was served on McCray on February 28 2013, McCray began an extensive course of litigation and filed repeated bankruptcy actions and appeals, all of which were either denied or dismissed and which were all affirmed by the appellate review. Each motion asserted the very same arguments McCray advanced in her Fourth Amended Complaint filed in McCray I (as well as in this case).  In this regard, McCray filed four (4) Motions to Dismiss, several Objections to Court Rulings, four (4) appeals to the Maryland Court of Special Appeals (2 were dismissed by her), several Motions for injunctive relief, a summary judgment, a removal to federal court and several bankruptcy matters (McCray III), all of which are more fully delineated in the Summary of State Proceedings attached as Exhibit 2 with the State Court case docket.

Despite all of McCray's actions, the foreclosure sale was duly noticed and occurred on November 15, 2017. The successful purchaser was the investor, Freddie Mac. Thereafter,

McCray filed several post sale motions challenging the authority of Freddie Mac and its involvement, all of which were summarily denied by the Circuit Court.

As to McCray's third appeal, on March 30, 2018 McCray sought injunctive relief once again pending her appeal (Exhibit 2 Dkt No. 94/0). The injunctive relief was denied. The Substitute Trustees thereafter filed a motion to dismiss the appeal as being an impressible interlocutory appeal, which COSA granted. Exhibit 2 Dkt No. 99/0

In McCray's most recent COSA appeal, on October 3, 2018 COSA in an unreported per curiam Opinion,  Case No 1463 September Term 2017  affirmed the Circuit Courts denial of McCray's multiple Motions to Stay or Dismiss she had previously filed. (Exhibit 3 COSA Opinion). McCray's petition for writ of certiorari to the Maryland Court of Appeals challenging the COSA opinion was denied by that Court on December 14, 2018.

## B. THE PENDING FEDERAL LITIGATION

After the foreclosure action was initiated, McCray filed her first Federal Court action in this Court (McCray I)  claiming numerous violations under the Federal Debt Collection Practices Act ("FDCPA") and other statutory violations against these Defendants, plus Wells Fargo and Freddie Mac.

McCray I is the first of the four (4) actions McCray has now filed in this Court. See FN 1. Additionally McCray filed (McCray II) GLR-16-934 which action asserted claims her extended claims in 2016, which were also reasserted in McCray I in her 4th Amended Corrected Complaint as well.  In McCray II, Judge Russell, in a clear written opinion dismissed all similar claims except the verification claim as it was still the issue left in McCray I, and then consolidated that case with McCray I (See Exhibit 4, McCray I-ECF 97). McCray III, Driscoll v. McCray, No. GLR-16-1791, was an attempt to remove the foreclosure action to this Court on June 2, 2016. On

March 20, 2017, the Court remanded that case back to Baltimore City Maryland Circuit Court for lack of subject matter jurisdiction (McCray III - ECF No. 77).

McCray filed the initial pro se Complaint (McCray I Exhibit 1 ECF 1) against Freddie Mac and Wells Fargo, as well as the White Law Firm, and attorneys employed by the firm, who are the substitute trustees named by Wells Fargo as servicer for Freddie Mac, in the foreclosure of a residential property securing McCray's mortgage loan. On June 13, 2013, McCray filed a five count Amended Complaint (McCray I ECF 6). The First Amended Complaint asserted violations of various federal and Maryland consumer protection statutes.

Wells Fargo, Freddie Mac, and the SIWPC Defendants filed Motions to Dismiss as to all the claims in the First Amended Complaint on July 1, 2013 (McCray I Exhibit 1 ECF 8 and ECF 13). While the motions to dismiss were pending, McCray filed a Motion for Leave to File Second Amended Complaint (McCray I Exhibit 1 ECF 35). The most significant change McCray made in the Second Amended Complaint was withdrawing the two state law claims and "adding" Wells Fargo Home Mortgage, which is a division of Wells Fargo.

In anticipation of the State Foreclosure Action proceeding with a foreclosure sale, McCray filed on September 23, 2013 a Chapter 13 Bankruptcy Action Case No 13-26131 in the United States Bankruptcy Court for the District of Maryland, which was later converted to Chapter 7 liquidation. McCray, after the stay was lifted to proceed with the foreclosure sale, was later discharged of her personal obligation of the debt on July 14, 2014. The lien still remained secured against the Property though her personal obligation to the debt was discharged.

Prior to her discharge, the United States Bankruptcy Court on May 21, 2014 ordered that the automatic stay be lifted, that Wells Fargo was entitled to proceed with the foreclosure action, and that the successful purchaser would be entitled to possession thereafter. See Exhibit 4 Court

Memorandum of Findings of Fact and Recommendations and Order granting relief from the automatic stay.

On January 24, 2014, this Court issued an Order (McCray I Exhibit 1 ECF 44) and Memorandum Opinion (McCray I Exhibit 1ECF 43) dismissing Freddie Mac, Wells Fargo and the SIWPC Defendants from McCray's FDCPA claim and dismissed the TILA claim altogether. The Court further dismissed McCray's RESPA claim to the extent that McCray was asserting that a "Notice of Default" dated September 14, 2011 constituted a Qualified Written Request under RESPA and to the extent that McCray was seeking damages for emotional distress (being the same as those sought under her FDCPA claim violations) for the alleged RESPA violations.

McCray the sought a Motion to Alter or Amend Judgment or Alternatively for Relief from Judgment on February 5, 2014 (McCray I Exhibit 1 ECF 46) and further filed a notice of an interlocutory appeal on February 21, 2014 (McCray I Exhibit 1ECF 51). On March 27, 2014 the District Court issued a Letter Order denying McCray's Motion to Alter or Amend Judgment or Alternatively for Relief from Judgment   (McCray I ECF 59).In the March 27, 2014 Letter Order the District Court also responded to McCray's question concerning the damages she is entitled to under RESPA, as follows:

> As previously noted in its Order, the statutory damages RESPA provides are "any actual damages" that occur "as a result of the failure" of Wells Fargo to respond to her qualified written requests as required. 12 U.S.C. §2605 (f)(1)(A) (2012). For example, McCray may recover any demonstrable out of pocket expenses she incurred for correspondence and travel. See *Tsakaniskas v. JP Morgan Chase Bank N.A.*, No. 2:11-CV-888, 2012 WL 6042836 at *2 (S.D. Ohio Dec. 4, 2012); *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp2d 1156, 1164 (M.D. Ala. 1999). She had not demonstrated that any other damages apply.

As the White Law Firm had been dismissed from the action, Freddie Mac and Wells Fargo filed their Answers to Count III of the Second Amended Complaint. (McCray I Exhibit 1 ECF 62). On June 30, 2014 the United States Court of Appeals for the Fourth Circuit dismissed McCray's interlocutory appeal. (See McCray I Exhibit 1 ECF 63). Thereafter, Wells Fargo and Freddie Mac filed their Motion for Summary Judgment. The District Court granted same.

McCray then noted once again noted her appeal to the Fourth Circuit (McCray I Exhibit 1 ECF 82). In that decision (McCray I Exhibit 1ECF 86), the Court affirmed the dismissal as of the action against Wells Fargo and Freddie Mac in essence asserting that Wells Fargo as servicer was vested with a beneficial interest as servicer to perform the foreclosure and as to the claim against Freddie Mac on the ground that McCray failed to "allege any sale, transfer, or assignment of her loan to Freddie Mac after Congress amended TILA to require notice." The Court concluded alternatively that because Wells Fargo informed McCray by a letter dated October 25, 2011, that Freddie Mac was the "investor" on the loan, McCray had notice of her claim as of that time and was therefore barred by the statute's one-year limitations period, see 15 U.S.C. § 1640(e), since she did not file the claim until May 2013.

As to the SIWPC Defendants, the Court reversed the dismissal of the FDCPA claim holding simply that McCray's complaint adequately alleged that the White Law Firm and the Substitute Trustees were deemed "debt collectors" and that their actions in pursuing foreclosure constituted a step in collecting debt and thus debt collection activity that is regulated by the FDCPA. The Court held that McCray plead sufficient facts to leap frog the Motion to Dismiss. The Court did note that the issue of materiality, despite being argued by the SIWPC Defendants, the District Court did not reach this argument, and the Court declined to address it on appeal.[5]

In December 2015, the Bankruptcy Court issued a final decree and closed McCray's bankruptcy case. On January 11, 2016, Defendants filed in McCray's state foreclosure case a "Notice of Termination of Automatic Stay of 11 U.S.C. Section 362." (*Id.* Compl.¶ 56). Defendants attached the final decree from McCray's bankruptcy case and asserted that they intended to resume foreclosure proceedings. (*Id.*). McCray received Defendants' January 11 notice on January 13, 2016. That same day, McCray sent Defendants a "Notice to Debt Collector" in which she afforded Defendants ten days to (1) "provide verified evidence that they had a right to continue the foreclosure action after the bankruptcy discharge,"; (2) rebut her notice "line by line,"; (3) "cease and desist any and all foreclosure actions that have not been rendered by a judgment issued through a court of record,"; and (4) provide a verified proof of claim that indicates that you are the  holder in due course. Defendants failed to respond to McCray's January 13, 2016 notice. On February 25, 2016, McCray received from Defendants a

---

[5] In an un related matter, due to a split in circuits dealing with the question if non-judicial foreclosures even fall within the FDCPA as there is no real debt collected from the borrower on the sale of property, the matter is pending decision (as oral argument has occurred) in the United States Supreme Court  case  of Obduskey v. McCarthy & Holthus LLP No. 17-1307.

notice dated February 22, 2016 that her home would be sold in a foreclosure sale. The notice provided the following: "Pursuant to Maryland Rule 14-210 and pursuant to Section 7-105.2 of the Real Property Article of the Maryland Code, we are hereby notifying you that the foreclosure sale of [the Property] has been scheduled.".

In the notice of sale, Defendants attached a copy of the newspaper advertisement that they intended to run to set forth the time, place, and terms of the foreclosure sale (the "Advertisement"). The Advertisement stated that "the holder of the indebtedness secured by this Deed of Trust [has] appointed [Defendants]" to carry out the foreclosure sale.. McCray alleged in in the initial complaint as in McCray II, that Defendants ran the Advertisement in The Daily Record on March 4, 11, and 18, 2016 in the "Public Notice" section. McCray further alleged that between March 4 and March 21, 2016, Defendants advertised the foreclosure sale of the Property on the website of Harvey West Auctioneers, LLC. On March 2, 2016, McCray sent Defendants a "Demand Notice to Cease and Desist Foreclosure Sale.", the very similar notice she alleges in the instant complaint (Compl.¶ 60). In addition to ceasing and desisting from selling her home, McCray's notice contained two demands. First, Defendants must "provide within 72 hours verification of the debt they were collecting, since the alleged debt was discharged on July 14, 2014 in [the Bankruptcy Court].". Second, Defendants must "provide within 72 hours, *verification that [the] SIWPC Defendants had an enforceable security interest* to take any non-judicial action to effect dispossession or disablement of [the Property]." (emphasis added) . When Defendants did not respond to McCray's March 2, 2016 notice, on March 14, 2016, she sent them a "Notice of Fault and Opportunity to Cure – Demand Notice to Cease and Desist and Violations of the [FDCPA].".

McCray further alleged that in the February 2013 foreclosure action, Defendants filed "an illegal substitution of trustee document" in but does not, however, elaborate on why the substitution was illegal. Once again this Court and others have held same to be proper and valid.

This Court, in its March 31, 2017 in a well reasoned Order (Exhibit 1 McCray I ECF 97) in the ancillary case McCray filed, McCray II, case number GLR-16-934, asserting the very same factual contentions and damages, as is in her 4th Amended Complaint in McCray I (but primarily as to the 2016 claims which further mirror the 2013 claims) McCray alleged, granted a partial summary judgment to the SIWPC Defendants as to McCray's claims under 15 U.S.C. §§ 1692c(a), c(b), c(c), e(2)(A), f(6)(A), and j(a), but denied the motions as to McCray's claim under 15 U.S.C. § 1692g(b) without prejudice. See Opinion, Exhibit 4 Exhibit 1 McCray II ECF

97. These findings tantamount to res judicata as to McCray's claims in both McCray I and in the instant case as to the matter adjudicated therein.

McCray then re-hashes in this action, the same arguments she made in McCray I and McCray II that in May (12) 2017, in that she sent a notice to cease and desist the foreclosure as her demands for a debt dispute were not properly validated and that she demanded that the defendants cease communicating with her  and that the repeated notice of foreclosure she admits receiving violated 15 U.S.C. §1692c( c). Compl.¶¶34 and 60.

Having received the notice of the sale for May 12, 2017 (Compl.¶ 34) McCray then filed another bankruptcy to stop the sale (Compl.¶ 36) case no 17-16727.which she voluntarily dismissed on June 21, 2017. Compl.¶ 36. Obviously, McCray uses and admitted has used the Bankruptcy Court improperly, solely as a stop gap method to inhibit and delay the foreclosure since she cannot obtain injunctive relief.

McCray then received another notice of a sale on July 27, 2017 (Compl.¶ 37) for the sale to occur August 22, 2017. That sale was cancelled by the Substitute Trustees.

A sale was then set for November 15, 2017. For which McCray received notice on October 20, 2017. Compl.¶ 39.

McCray now asserts with regard to the November 15, 2017 foreclosure sale, the very same arguments she did in the State foreclosure action,  which are similar arguments to those she advanced in McCray I and II,  that no trustee was present at the sale as the Defendant Arnold Hillman who is not a named Substitute Trustee called the sale and that he submitted an improper bond to the Circuit Court . Compl.¶ 40. Again, despite no error in the bond or how the sale was conducted (as determined by the Circuit Court in the denial of her exceptions to the sale where she argued this very point- Exhibit 2 Dkt nos. 81 and 87). Yet she does not explain factually how this impacted her, and her conclusion is still the ironic twist that she uses as a means of misconstruing the applicable FDCPA statute so as to bootstrap herself into a FDCPA claim.

McCray continues to argue that Defendant A. Hillman filed a bond (Compl.¶ 41)  which named  himself, as well as Defendants Reynolds and Driscoll, who are named Substitute Trustees, among others. (Compl.¶ 44) and because the bond named others who were not named substitute trustees, it contained "false deceptive and misleading information". Compl.¶ 42.  More perplexing is that Deena Reynolds, a named Substitute Trustee who testified in her deposition in McCray I that she signed the bond which was filed and was on the phone with or available for Defendant A. Hillman at the time of the sale, which is contrary to what McCray asserts in her

complaint (See Compl.¶ 45), was actively involved in the foreclosure sale. The bond also named a Defendant Turner, who is now named in the instant action who appears to have also submitted the amended statement of debt in the foreclosure action. Compl.¶ 69(b).Therefore since she filed the amended statement of the debt then due and was named in the bond, there were false statements subject to the FDCPA. *Id.*

The Property was repurchased by the secured party Freddie Mac Complaint, ¶47. Once the sale was concluded, an amended statement of debt taking into consideration arrearages since the original Order to Docket was docketed in the Circuit Court action. Compl.¶ 46. Despite the Circuit Court receiving the Report of Sale and the Affidavit of the Purchase, McCray asserts that the Circuit Court has no record of Freddie Mac being the Purchaser Compl.¶ 48) which is contrary to the Circuit Court Docket where the Report of Sale, the Auctioneer's Affidavit, the Affidavit of the Purchaser and the NISI publication (Exhibit 2 Dkt Nos. 82, 83,84,and 86).

McCray then proceeds to assert that the Amended Affidavit of Deed of Trust Debt filed on November 28, 2017 (Exhibit 2 Dkt No 78/0) was a 'false' representation and in violation of 15 U.S.C. §1692e(10) . Compl.¶ 60

McCray then avers that the undersigned's response pleadings in the foreclosure case were false and misleading (Compl.¶ 50) and thus sanctionable under the Code of Professional Conduct (Compl.¶¶51 & 52). These acts McCray alleges all were done with the to dispossess her of her property. Compl.¶53.

McCray claims a generalized violation of 15 U.S.C. §1692f(6)(A) (Compl.¶72) as to the entire 2013 foreclosure action, and finally moves for injunctive relief which has been previously denied in  both the Circuit Court  (Exhibit 2 Dkt 40/6,  57/1, 71/2), as well by this Court in McCray I (Exhibit 1 McCray I ECF 149).

Presently the parties have filed in McCray I motions for summary judgment which too address the very same issues raised herein by McCray.

### III.   <u>STANDARD OF REVIEW</u>

**A.**   <u>**Standard of Review on Motion to Dismiss**</u>.  The purpose of a motion to dismiss filed pursuant to Federal Rule 12(b)6) is to test the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999). The complaint itself must demonstrate "entitlement to relief" that consists of more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Determining whether

a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. Dismissal is proper when the face of the complaint (and its exhibits) reveal the existence of a meritorious defense. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). In this case, considering the allegations of the Plaintiff's Complaint, she has failed to state any cognizable claim that entitles her to any form of relief or damages.

**B.      Rule 12(b)(6) Motion to Dismiss or Summary Judgment**. Rule 12(d), FRCP, provides that if, on a motion brought under Rule 12(b)(6), matters outside the pleadings are presented to the court, the motion must be treated as one for summary judgment under Rule 56. However, an exception is made for authentic documents which are referred to in the complaint and upon which the plaintiff relies in bringing the action (i.e. if they are integral to the complaint). *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Youssefi v. Renaud*, 749 F.Supp.2d 585, 590-591 (D. Md. 2011). In this case, McCray attached to her original Complaint the promissory note, Deed of Trust and Corporate Assignment of Deed of Trust and refers to correspondence and other alleged communications with the Defendants    The Court may consider these documents without converting the Motion to Dismiss to a Motion for Summary Judgment. See also, *Brown v. Chase Bank, N.A.*, 2013 WL 1278523 (E.D. Mich. 2013) and authorities cited therein, Report and Recommendation of Magistrate Judge adopted in 2013 WL 1281919 (E.D. Mich. 2013) (noting that a court may consider a document that is not formally incorporated by reference or attached to a complaint if the document is referred to in the complaint and is central to the plaintiff's claim without converting the motion to dismiss into one for summary judgment.) Furthermore, with respect to the proceedings in the Circuit Court for Montgomery County, a federal district court may take judicial notice of documents from state court proceedings (such as those filed in the Foreclosure Action) and other matters of public record in conjunction with a Rule 12(b)(6) motion without converting it to a motion for summary judgment. *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Papasan v. Allain*, 478 U.S.265, 268 n. 1 (1986)).

The matters presented in this motion material to its disposition are either referred to by McCray in her Complaint or from her prior three (3) cases filed in this Court, or are matters of public record in the state court proceedings and public land records. Accordingly, the Court may decide the Motion to Dismiss without converting it to a Motion for Summary Judgment. In the alternative, should the Court believe it necessary to convert the motion to a motion for summary

judgment, then the Court should grant the motion for summary judgment under Rule 56 because there is no genuine dispute as to any material fact.

**C.**     **Standard of Review for Summary Judgment Motion**.   Rule 56(a), FRCP provides as follows:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

In resolving a summary judgment motion, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts'" showing that there is a triable issue. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a dispute of material fact that precludes summary judgment. *Id.* at 248.

## IV.     ARGUMENT

### A.  THE STANDING AND DAMAGES ISSUEMANDATE DISMISSAL

Defendants also contend that McCray lacks standing to pursue her claims because she has failed to allege a cognizable injury-in-fact, as defined in the Supreme Court's decision in *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). Indeed, the Supreme Court reaffirmed that a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). As the party invoking federal

jurisdiction, McCray bears the burden of establishing those elements. *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130.

In *Spokeo*, the Court reiterated that to satisfy the first element of the *Lujan* test, a plaintiff must establish that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" 136 S.Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130). To be "particularized," an injury "'must affect the plaintiff in a personal and individual way,' " *Spokeo*, 136 S.Ct. at 1548 (citing *Lujan*, 504 U.S. at 560 n. 1, 112 S.Ct. 2130). A "concrete" injury, on the other hand, is one that is "'real,' and not 'abstract.' ". *Spokeo*,136 S.Ct. at 1548 (citing Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967)).

Despite the allegation in the Complaint, McCray in her depositions (taken this last August 2018 after the instant foreclosure sale which she complains of) admitted that she sustained no damages arising out of any of the alleged FDCPA violations. At her first deposition in McCray I, McCray contended that she had not identified her damages because she was still compiling the information. McCray was quite clear that she has made no effort whatsoever to look for any receipts to document her damages or even state an estimate of the total damages that she contends she incurred with regard to any debt validation claim.

> Q. What evidence do you intend to submit to the court to substantiate your damage claims in this case?
> A. I'm still working on compiling them together.

McCray Deposition,  McCray I Exhibit 174-10 p. 205.
\*        \*        \*

> Q. And so you've known since January what part of your case was still alive and what part the judge had dismissed, right?
> A. That's correct.
> Q. And the judge in this Order and Memorandum Opinion discussed the type of damages that you could try to claim in this case, correct?
> A. That's correct.
> Q. And you made no effort from January up until September to try to determine what your damages are in this case is that right?
> A. No, I was fighting you on appeals to get--to get all of my claims together, whereas I would be able to pursue every claim, so I was in appeals court.

McCray Deposition, McCray I Exhibit ECF174-10 pp. 37-38.
\*        \*        \*

> Q. Tell me the total amount of damages that you claim in this case?
> A. I don't know offhand.  I cannot give you an exact amount.

16

Q. Okay. Give me an approximate amount.
A. I can't give you an approximate amount.

McCray Deposition, McCray I Exhibit ECF174-10 p. 25.

Subsequent to her deposition, on November 13, 2014 McCray provided a document entitled "Plaintiff's Itemized List of Damages," McCray I Exhibit ECF174-25. Once again in her second deposition on August 2, 2018, McCray provided a document entitled "Plaintiff's Itemized List of Damages," McCray I Exhibit ECF174-29. However, rather than identifying any expenses allegedly incurred as a result of any failure to timely respond to a debt dispute, McCray listed in summary fashion all expenses she has incurred in connection with her legal activities disputing the authority of Wells Fargo to foreclose, including those incurred as part of her spurious debt elimination schemes such as her "Federal Postal Court Filing," "Mortgage Securitization" and the like. In fact in that deposition, McCray testified that any activities in her ongoing disputes and lawsuits with Wells Fargo are part of her claim.  McCray I Exhibit ECF174-10 p. 16-17. In her second deposition as to the Amended Fourth Complaint in McCray I and consolidated II, McCray admitted that she did not have any damages as to the verification claims or the notices, documents and pleadings docketed in the foreclosure sale action. In her deposition McCray stated:

Q. Okay. Besides the filing of the document [speaking of the Deed of Substitution of Trustees] and the failure to verify, do you have any other damages?
A. My life.
Q. Okay.
A. My life, the emotional stress and everything that I have been through.
Q. That's the foreclosure --
A. That's the foreclosure. That's --
Q. -- that you've already established here.
A. That's the foreclosure. That's them violating the FVCPA [FDCPA].
Q. Right. So your damages are the foreclosure action that was --
A. The illegally filed foreclosure action.

McCray Deposition McCray I Exhibit ECF174-7 pp.91-92

In her subsequent deposition on August 2, 2018 McCray once again revalidated that her damages arise out of the foreclosure action  and not the instant case when question about her list of damages (McCray I Exhibit ECF174-29)

Q: Okay. All of these expenses on your itemized list of damages [Deposition  Exhibit 27 which is Exhibit 29 hereto] are—arise for the foreclosure action; correct?
A: That's correct.

McCray Deposition McCray I Exhibit ECF174-7 Pg. 84

Regardless, McCray's damages, prior to and subsequent to the sale are not "actual or concrete". While McCray alleged that she has been damaged "[a]s a result of Defendant's improper debt collection practices" in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), 1692e(10), and 1692f, (McCray I- ECF 105 4th Amend. Compl.¶¶ 41-44)  her testimony is that her damages arose as she testified to, the "...[T]he illegal filed foreclosure action"... (McCray Deposition McCray I Exhibit ECF174-7 p 92).  Again the Maryland Court of Special Appeals (Exhibit 3) like this Court and the United States Bankruptcy Court (Exhibit 5) have determined that the Substitute Trustees had a right to foreclose as directed by Wells Fargo for Freddie Mac. Indeed the Circuit Court has already held in denying McCray's exceptions she took to the foreclosure sale (Exhibit 2 Dkt No 81/3) that there were no procedural irregularities in how the sale was conducted  such that the foreclosure was not a "illegal" action as McCray  tries to qualify it.

According to McCray, she disputed a debt with the White Law Firm (though she contends it was all of the SIWPC Defendants despite sending only a single letter to the White Law Firm, (McCray I- ECF 105- 4th Amended Compl.¶11), but that the individual SIWPC Defendants failed to allegedly verify the disputed debt, and constituted a violation of 15 U.S.C. §1692e (prohibiting broadly "any false, deceptive, or misleading representation" in the collection of a debt), §1692e(2) (prohibiting the "false representation" of the "legal status of any debt"),§1692e(10) (prohibiting the "use of any false representation or deceptive means to collect or attempt to collect any debt"), and §1692f (prohibiting "unfair or unconscionable" debt collection). McCray merely asserts conclusory statements unsupported by any verifiable factual components.

McCray admitted that she only sustained damages associated with the alleged "illegal filed foreclosure action" litigation and challenging the Deed of Substitution of Trustees (McCray I- ECF 105 4th Amend. Compl.¶ ¶33-35), Plaintiff does not further articulate any tangible actual harm that she has suffered directly arising from or traceable to the verification issue. Furthermore, McCray does not even appear to allege that she suffered an intangible injury by virtue of any technical procedural violation, if any, so as to even assert a claim for the $1000.00 statutory damages.

The Act provides that "any debt collector who fails to comply with any provision of th[e] [FDCPA] with respect to any person is liable to such person." 15 U.S.C. §1692k(a). This broad language entitles any successful plaintiff to actual damages, costs, and a reasonable attorney's fee that is set by the court. *Id.* The court may also allow additional damages, subject to a $1,000 limit. *Id.* In considering whether to award additional damages, a court must consider "the frequency and persistence of [the debt collector's] noncompliance," "the nature of such noncompliance," and "the extent to which such noncompliance was intentional." 15 U.S.C. §1692k(b). Here McCray advances no argument nor any evidence of any intentional, frequency or persistence of noncompliance behavior by the SIWPC Defendants, such that she is not entitled any statutory damages arising from the verification issues.

As is evident from the filings in the State foreclosure action, McCray has repeated sought to stay or dismiss the foreclosure action which had been docketed in the Circuit Court. However, that Court denied the requested relief in each instance. McCray has also disputed Wells Fargo's standing, as holder of the note, to instruct the Substitute Trustees to institute the foreclosure action. However, the U.S. Bankruptcy Court found otherwise and granted the Motion to Lift Stay over McCray's objection after a full day evidentiary hearing in which the original note was produced (See Exhibit 5, Order). In addition, the U.S. Bankruptcy Court, in recommending dismissal of McCray's related adversary claim, found that Wells Fargo is the holder of the note and has authority to enforce the note and appoint the substitute trustees. (See Exhibit 5, Bankruptcy Court's Proposed Findings and Conclusions In Support of Dismissal of Amended Complaint.)

To date, McCray continues to contend that "missing" from Wells Fargo's and the SIWPC Defendants communications to her is information concerning the "assignment" and "securitization" of her mortgage loan. She has repeated asserted in this case which is contrary to the findings of other Courts, that Freddie Mac is not the secured party based upon this alleged securitization and that the SIWPC Defendants don't represent Freddie Mac in the foreclosure;

> Q. What is the missing link? What is the missing piece of information that you contend that you've never been told?
> A. Missing link is Wells Fargo claims to be was that they have received the promissory note, that they bought it from American Home Mortgage. I would like to see the assignment and what they paid for it. And also they claim that it went to Federal Home Loan Mortgage. I would like to see the assignment and what they paid for it, and I also had a securitization done and I want them to admit to the fact that it was securitized and the note has been converted into a security.

McCray I Deposition, Exhibit 174-10  pp. 201-202.

As the court noted in *In re Veal*, 450 B.R. 897, 909 (9th Cir. BAP 2011), "[u]nder established rules, the maker [of a note] should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note." 450 B.R. at 912. Accord *Deutsche Bank Nat. Tr. Co. v. Brock*, 430 Md. at 731, 63 A.3d at 50. infra. McCray does not contend that the assignment in anyway impacted her ability to make payments or that she does not know to which entity her payments are due, and thus, the question of which entity owns the Note is irrelevant to the resolution of the present case. Id. *Deutsche Bank Nat. Tr. Co. v. Brock*, 430 Md. at 731, 63 A.3d at 50.

McCray has no competent evidence that she incurred any actual damage as a result of any alleged failure to timely respond to her alleged debt dispute or that she sustain any damages as a result of the notices sent to her, or as to any of the documents filed in the foreclosure procedure. Indeed, the Courts have held to the contrary and candidly those decisions tantamount to res judicata of the present claims. Here, McCray cannot make and has not to date made such an evidentiary demonstration and even admitted that her statutory claims are traceable not out of the FDCPA , but out of the "illegal foreclosure action" (and the Deed of Substitution of Trustee). Therefore, McCray has not sufficiently alleged nor proved that she has standing as mandated by *Spokeo*. Indeed McCray admits that her injury and damages arise out of the State foreclosure action alone.

## B.  CLAIM PRECLUSION AND THE YOUNGER DOCTRINE MANDATES DISMISSAL WITH PREJUDICE

As discussed more fully below, Defendants have moved to dismiss the Complaint or in the alternative for summary judgment, noting how the factual allegations fail to support any of the causes of action asserted. More broadly, however, the Defendants argue that, because the instant claims are premised on the same argument raised in the foreclosure action and rejected by the Circuit Court and COSA, Plaintiffs' claims here are barred by *res judicata* or collateral estoppel. In a somewhat related argument, Defendants also content argue that, under the *Younger*[6] abstention doctrine, this Court should abstain from exercising jurisdiction over this action so as not to interfere with the pending state foreclosure action. The *Younger* abstention doctrine requires a federal court to abstain from interfering in state proceedings, even if

---

[6] *Younger v. Harris*, 401 U.S. 37 (1971).

jurisdiction exists, when there is: "(1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal . . . claim advanced in the federal lawsuit." *Laurel Sand & Gravel, Inc.* 519 F.3d at 165 (quoting *Moore v. City of Asheville*, 396 F.3d 385, 390 (4th Cir. 2005)). *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir. 1994).

Here, the foreclosure proceeding in the Baltimore City Circuit Court is an ongoing judicial proceeding; Maryland has a substantial interest in its property law; and McCray did raise her FDCPA claim in the foreclosure proceeding as an exception to the sale which that Court denied. Here McCray seeks to have this Court not only act on the same issues previously addressed but t act as the reviewer of that Courts decision which is contrary to the Rooker Feldman doctrine (also discussed below). Defendants note, this Court has frequently applied Younger abstention where there are ongoing foreclosure proceedings in the state court. See, the holding in McCray I Exhibit 1 ECF 97; e.g., *Barilone v. OneWest Bank, FSB*, Civil Action No. ELH–13–00752, 2013 WL 6909423, at *5 (D. Md. Dec. 31, 2013) (dismissing plaintiff's claims under Younger where there was a pending foreclosure action in state court); *Graves v. One West Bank, FSB*, No. DKC–13–3343, 2014 WL 994366, at *2 (D. Md. Mar. 13, 2014) (denying motion for reconsideration because Younger abstention doctrine mandated dismissal due to pending foreclosure action in state court and noting that the plaintiffs could raise their FDCPA claim in the foreclosure proceeding); *Fiallo v. PNC Bank, Nat'l Ass'n*, No. PWG–14–1857, 2014 WL 6983690, at *2–3 (D. Md. Dec. 9, 2014) (discussing Younger doctrine as alternative grounds for dismissal).

Although Defendants are aware of the Supreme Court's decision in *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (U.S. 2013) and the Maryland District Court's decision in *Tucker v. Specialized Loan Servicing, LLC*, 83 F.Supp.3d 635, 643 (D. Md. 2015), recent Federal District Court decisions in the 4th Circuit have applied the abstention doctrine when there is an ongoing state foreclosure action. In light of this Court's and other decisions by Federal District Courts in the 4th Circuit, Defendants believes that dismissal of this action under the abstention doctrine may be appropriate. Once more, the right to foreclose has been decided by the Maryland Courts, necessitating this Court to refrain from ruling thus validating the Substitute Trustees right to judgment.

## C. THE INDIVIDUALLY NUMBERED COUNTS

As to the individually number counts the White Law Firm asserts the following arguments for dismissal and or summary judgment.

### 1.  COUNT I  Alleged Violation of 15 U.S.C. §1692c(c)

McCray argues here that in essence, because she sent "cease and desist notice" on May 12, 2017, when counsel sent subsequent notices setting the foreclosure sale for November 15, 2017, that they violated  15 U.S.C. §1692c(c). Here McCray contends that "[A]ll of the SIWPC Defendants continued to file false, deceptive and misleading documents into the state foreclosure action in an attempt to illegally dispossess the Plaintiff of her property". Comp. ¶65. Then when the property was in fact "allegedly" sold the violation occurred because they had no right to do so. Comp. ¶66.

Here as in her prior actions, McCray not only misconstrues the applicable statutes and Rules, but fails to acknowledge prior holdings of this Court, the United States Bankruptcy Court with regard to the adversary action findings and the resulting affirmance by the United States Fourth Circuit Court of Appeals, the Circuit Court of Maryland for Baltimore City and the resulting appeal McCray took to the Maryland Court of Special Appeals (COSA) (and the Maryland Court of Appeals which denied her certiorari petition).

To begin with, McCray misconstrues §1692c(c). The statute provides in part " c. Ceasing communication. If a consumer notifies a debt collector in writing that the consumer ....wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, **except—** ....*(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.*" (emphasis added) 15 U.S.C.A. § 1692c(C)(3). Obviously, by sending McCray the mandatory statutory notices of foreclosure (Md. Rule 14-210(b)) the SIWPC Defendants were advising the consumer they were invoking a specified remedy as a result of McCray's default.

Md. Rule 14-210(b)[7] requires that notice be provided in advance of the foreclosure sale. Here notice was provided as required and mandated so as to complete the foreclosure sale.

---

[7] RULE 14-210. NOTICE PRIOR TO SALE provides in part:... "(b) By Certified and First-class Mail. Before selling the property subject to the lien, the individual authorized to make the sale shall also send notice of the time, place, and terms of sale (1) by certified mail and by first-class mail to (A) the borrower, (B) the record owner of the property, (C) the holder of any subordinate interest in the property subject to the lien, and (D) a condominium or homeowners association that, at least 30 days before the date of the proposed sale, has recorded a statement of lien

Additionally, the Courts referenced above have all held that Wells Fargo as servicer had the right to pursue the foreclosure action as a result of McCray's payment default under the loan she admitted signing. Comp. ¶8. See Memorandum of Findings and Recommendation by the United States Bankruptcy Court Exhibit 5 and COSA, Exhibit 3. It is clear that the motive behind this instant complaint is once again to try and collaterally attack the findings of those Courts. Generally accepted claim preclusion inhibits such attacks as "[U]nder the doctrine of res judicata 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.' " *Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir.2000) (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)).

"To establish a res judicata defense, a party must establish: (1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Jones v. SEC*, 115 F.3d 1173, 1178 (4th Cir.1997) (internal quotation marks omitted). Res judicata not only "bar[s] claims that were raised and fully litigated," but also " 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.' " *Peugeot Motors v. E. Auto Distrib.*, 892 F.2d 355, 359 (4th Cir.1989) (quoting *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)). "Res judicata . . . bars a party from relitigating a claim that was decided or could have been decided in an original suit." *Laurel Sand & Gravel Co. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008) (citing *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004)). Indeed many of the very arguments advanced by McCray have now been adjudicated in the State Court foreclosure as delineated in the COSA opinion. See Exhibit 3. When a federal court litigant asserts res judicata based on a state court judgment, "[the] federal court must give to [the] state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. at 81. The Maryland analysis of res judicata mirrors that of the federal courts.  See *Capel v. Countrywide Home Loans, Inc.*, No. WDQ-09-2374, 2010 WL 457534, at *3 (D. Md. Feb. 3, 2010) (citing *Anne Arundel County Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005))

All aspects of res judicata apply relative to McCray's prior cases (McCray I and II) as well as issues finding that the secured parties and the substitute trustees had the right to foreclose upon

---

against the property under the Maryland Contract Lien Act and (2) by first-class mail to "All Occupants" at the address of the property. The notice to "All Occupants" shall be in the form and contain the information required by Code, Real Property Article, § 7-105.9 (c)...."

McCray as determined by the Maryland circuit and appellate courts. The parties are the same and the claims presented are identical. As the prior case which was thereafter consolidated into this matter, resulted in a dismissal based upon the merits, was determined to be sufficiently firm to be accorded conclusive effect,' based on factors such as whether the parties were heard in the issue and whether the decision was appealable." *Graves v. OneWest Bank, FSB*, No. PWG-14-1995, 2015 WL 2452418, at \*5 (D. Md. May 20, 2015) (quoting *Morgan v. Morgan*, 68 Md. App. 85, 92 (Md. Ct. Spec. App. 1986) (quoting Rest. 2d (Judgments) §13 (emphasis in *Morgan*))). Therefore, it is clear that the claim preclusion aspect of the doctrine applies which dismissed all but the verification issue on 15 U.S.C. § 1692g.

Furthermore, McCray's claim is barred by the one (1) year statute of limitations. 15 U.S.C. § 1692k(d)[8]. The one-year statute of limitations (SOL) for Fair Debt Collection Practices Act (FDCPA) claims begins to run when the alleged violation occurs and not when it is discovered. Generally, the statute of limitations begins to run when a communication violating the FDCPA is sent. *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 501(D. Md. 2004). See *Peoples v. Wendover Funding*, 179 F.R.D. 492, 499 (D.Md.1998) (citing *Mattson v. U.S. West Communications, Inc.*, 967 F.2d 259, 261 (8th Cir.1992) (stating that a cause of action accrues under the FDCPA when creditor mails collection letter because that date was last opportunity creditor had to comply with the FDCPA; *Cf Rotkiske v. Klemm*, 890 F.3d 422 (3rd Cir 2018) (alleged violation occurs and not when it is discovered). In this regard McCray argues she sent the cease and desist notice on May 12, 2017. McCray Compl.¶60. She then claims that that she received the Notice of Sale dated October 17, 2017 for the November 15, 2017 foreclosure sale on October 20, 2017. McCray Compl.¶63. The instant action was not filed until November 13, 2018. Since McCray asserts the sale occurred on November 15, 2017, the operative date of the violation is the date the notice was sent - October 17, 2017, so under case law McCray is 27days too late. *Id.*

Equally in McCray II, as to the §1692c claims (communications in connection with debt collection) there is no evidence that any of the Defendants ever communicated with McCray in any of the forms of communication delineated by §1692c(a). Indeed, the deed of trust and note as discussed above, provide that McCray agreed and consent to the communications she contests with the third parties Deed of Trust McCray I Exhibit 174-1 ¶22. More perplexing is that

---

[8] The text reads in part: "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court . . . *within one year from the date on which the violation occurs.*" (Emphasis added)

McCray argues that she demanded that these Defendants cease and desist selling her home or communicating with her, but she repeated demanded that these Defendants communicate with her as indicated in her demand for validation of her debt.

15 U.S.C. § 1692 c(a) outlines the three specific forms of communication that are prohibited without consent which McCray indirectly asserts pursuant to her cease and desist contentions. Those forms are delineated 15 U.S.C. §1692c(a) as:

> " (1)[communication] at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer . . . .;" (2) [communication] if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, . . .; or (3) [communication] at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication."

Obviously none of the prohibited communication was used here so McCray's misconstrued use of the statute is without basis.

Finally, to the extent McCray asks the Court to conclude that Wells Fargo could not act in pursuing the foreclosure and thus appointing the substitute trustees and its counsel (the SIWPC Defendants) to pursue the foreclosure action in state court, the Court must abstain under the *Younger* Doctrine from resolving this issue and deny the claim. See *Younger v. Harris*, 401 U.S. 37 (1971). Clearly, the right to foreclose has been decided by the Maryland Court, necessitating this Court to refrain from ruling thus validating the Substitute Trustees right to judgment.

## 2. COUNT II Alleged Violation of 15 U.S.C. §1692e

Section 1692e of the FDCPA proscribes false, deceptive, or misleading representations in connection with the collection of a debt. Originally, McCray alleged that all the SIWPC Defendants violated subsection of 1692e(2)(A), which prohibits false representations regarding the "character, amount, or legal status of any debt." In McCray I and II, McCray, disputed she owed Wells Fargo the amount claimed and that was the reason that she sent the debt dispute. Yet even with this alleged dispute (after receiving the her accounting from Wells Fargo in 2011 and 2012) and her receipt of the Notice of Intent to Foreclose (NOI) (McCray I ECF Exhibit 174-8) which is a Maryland State require form that need be sent 45 days prior to docketing a foreclosure, McCray never suggested that the NOI was incorrect. Indeed, McCray never sought declaratory relief as

to the amount claimed to be in arrears or the unpaid principal balance of the debt, nor nature, or the legal status of the debt, nor did she ever dispute the character of the loan, or that she was in default.

Now, as in the foreclosure action when she filed exceptions to the sale, McCray contends that the foreclosure fidelity bond, which has no impact on her in the foreclosure proceeding, which was filed prior to the sale (by Defendant A. Hillman who also was present for the sale; he also had a Substitute Trustee/Defendant Reynolds, available by phone and she made the opening secured party bid) to protect those who deal with the substitute trustees at the sale, contained what she contends is false information (§1692e(10)) because it contained the named of others who were not substitute trustees. Compl. ¶69(a). If noting else by including others who are active in the foreclosure proceedings the bond protects McCray's sale from issues that could otherwise arise. Hence, McCray seeks to twist the facts to try and pigeonhole them in to some perceived misconstrued violation of the statute where clearly it is not.

McCray then goes on to suggest that by Defendant Turner not only being named in the bond but by also filing an amended affidavit of debt in the foreclosure action which factually stated the debt due on the loan against the collateral was $97,327.63, that it too was false, because McCray had been discharged of the debt and she owed nothing. Compl. ¶69(b). Once again, McCray misstates that the amendment was to clarify the amount then due under the lien, as of the date of the sale, which purpose is not to collect anything against her, but to advise the Court what the outstanding amount that was then due against the collateral on the lien. Again it is a nonsensical twisting of the facts by McCray, so as to bootstrap herself into some alleged violation.

In this same frame of mind McCray contends Defendant Driscoll did not represent the foreclosure purchaser Freddie Mac who was the investor and the when the undersigned fled pleading in the state action in opposition to McCray's foreclosure exceptions which raised these very arguments, the undersigned too made false and deceptive statements in an attempt to collect her debt. McCray Compl. ¶69(c). She contends that she has been provided with no proof of such representation and thus concludes this to be a false representation.

Initially, McCray's personal obligation as to the debt was discharged in her bankruptcy. Indeed there are no collections demands were every made against McCray

for the payment as the foreclosure is an in rem action solely done against the property so as to foreclose any interested parties right of redemption in the collateral. Thus she was not a debtor, who arguably is covered by the FDCPA[9]. No where in her complaint does McCray even allude to any such claims knowing that this very argument has been made by her in other Courts of competent jurisdiction and completely discounted.

Secondly, as an attorney, Discoll's representation in Maryland is all that is needed and McCray would not be entitled to any documentation evidencing that fact. Again she was provided with the NOI which delineated Freddie Macs involvement and also the referral from Wells Fargo, and the Bankruptcy Courts findings, all of which she wishes to ignore.

Once again *res judicata* and the Younger doctrine vitiate McCray's of filing false, deceptive, and misleading documents in the foreclosure action claims.

### 3. COUNT III Alleged Violation of 15 U.S.C. §1692f

Section 1692(f) of the FDCPA prohibits debt collectors from employing unfair or unconscionable means to collect or attempt to collect a debt. Subsection (6)(A) proscribes "[t]aking or threatening to take any non-judicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest."

McCray alleges that Defendants violated this subsection when they filed in McCray's state foreclosure case the foreclosure proceedings. Initially, in McCray I, McCray asserted that filing of the foreclosure based upon an 'unverified debt' is a violation of subsection (6) which prohibited those Defendants from filing the non-judicial foreclosure action in Baltimore City Circuit Court. Now, McCray continues as she has by contending that the "Defendants have never proven that they represent a creditor of the Plaintiff who has an enforceable security interest in the property." Compl. ¶72.

First, to the extent McCray contests whether Wells Fargo has an enforceable security interest in the Property, the *Younger* abstention doctrine precludes the Court from resolving this issue. As discussed above, all three elements of the Younger test are satisfied. As the Maryland Circuit Court (See Summary explanation in McCray I ECF Exhibit 174-2) and the Maryland Court of Special Appeals (McCray I ECF Exhibit 174-3) have determined that Wells Fargo had the right

---

[9] This is the very premise of the argument made in the case presently before the U.S. Supreme Court See FN 4 *infra*.

to foreclose on McCray as has the United States Bankruptcy Court (McCray I ECF Exhibit 174-4 at *6-7) then McCray's claim under 15 U.S.C. §1692f(6)(A) must be denied. See *Ward v. Branch Banking & Trust Co.*, No. ELH-13-01968, 2014 WL 2707768, at *14 (D.Md. June 13, 2014) (dismissing under Younger plaintiffs' 15 U.S.C. § 1692(f)(6)(A) claim because the enforceability of bank's security interest in real property must be determined in state foreclosure action). The Circuit Court ruled repeatedly that McCray's motions to dismiss lacked merit and that the SIWPC Defendants had a right as designees by the holder Wells Fargo, as delineated in the Deed of Substitution of Trustee (Exhibit 6 which is signed by Wells Fargo) to foreclose and did in fact did foreclose on November 15, 2017. Once more Younger and res judicata, moot out the arguments advanced by McCray. See COSA Opinion discussion Exhibit 3; McCray I ECF 174-3.

More so, McCray's attempts to bootstrap herself in to a post foreclosure challenge of the right to foreclose further fails as a direct result of the Rocker-Feldman doctrine. The Rooker–Feldman doctrine is the namesake of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Rooker–Feldman doctrine generally bars district courts from sitting in direct review of state court decisions. The prohibition extends not only to issues actually decided by a state court but also to those that are inextricably intertwined with questions ruled upon by a state court. A federal claim is inextricably intertwined with a state court decision if success on the federal claim depends upon a determination that the state court wrongly decided the issues before it. Here COSA has concluded, as had the United States Bankruptcy Court, that the secured party had a right to foreclose and appoint the Substitute Trustees as they have. (Exhibit 5; McCray I ECF Exhibit 174-4). As such McCray the Court must abstain from McCray's collateral challenge here of the foreclosure action under Rooker-Feldman.

### 4. CLAIM FOR INJUNCTIVE RELIEF

McCray's claim for injunctive relief, authenticates that the real nature of McCray's claims – a collateral challenge the foreclosure action.

McCray on August 14, 2017 made a demand for injunctive relief in the Maryland Circuit Court foreclosure action and it was denied. Exhibit 2 Dkt 71/2. This matter then was included in McCray's appeal to COSA, which affirmed not only the denial of her numerous Motions to Stay and Dismiss she filed but the injunctive relief action. See Exhibit 3 COSA opinion.

McCray then sought the same relief in the pending case McCray I (13-cv-01818-ADC).In a very well reasoned opinion the Court denied the relief. See Memorandum Opinion McCray I Exhibit 1 ECF 149-Memorandum as Exhibit 7.

First and foremost Younger and res judicata would prevent this Court from considering such relief, as McCray is seeking injunctive relief to restrain the Baltimore City Circuit Court's decision, which was subsequently confirmed on appeal by COSA.

Secondly, the U.S. Bankruptcy Court has also found that the secured party and hence the named Defendants in McCray I, were entitled to proceed with the sale of the property when the automatic stay of proceedings was lifted and Plaintiff was discharged of the debt. In Re: Renee L. McCray NVA 13-26131, Docket No. 79.Exhibit 5.

Even if this Court were to consider same McCray cannot and has not met the necessary burden of proof. In order to prevail on a motion, the Fourth Circuit has applied the standard set forth in Winter v. Natural Resources Defense Counsel, Inc., 555 U.S. 7 (2008). *Real Truth About Obama, Inc. v. Federal Election Comn*, 575 F.3d 342, 345 (4,h Cir. 2009).

> "In its recent opinion in Winter, the Supreme Court articulated clearly what must be shown to obtain a preliminary injunction, stating that the plaintiff must establish "111 that he is likely to succeed on the merits. [2] that he is likely to suffer irreparable harm in the absence of preliminary relief. [3| that the balance of equities tips in his favor, and [4 j that an injunction is in the public interest." Winter, at 20. And all four requirements must be satisfied. Id. Indeed, the Court in Winter rejected a standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm because that standard was" inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 20.

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Id.*

Here, as in McCray I, this Court already found, that based upon the above arguments in response to McCray's claims, there is little if any likelihood that McCray would or even will succeed on the merits. Accordingly, this Court must deny the injunctive relief sought for the same reasons advanced in McCray I decision.

## V.    CONCLUSION

Wherefore, for all the above reasons, Defendants request that their Motion to Dismiss be granted or in the alternative, that the Court grant Defendants' Motion for Summary Judgment.

Respectfully submitted

Samuel I. White, PC

/s/ Robert H. Hillman
Robert H. Hillman, MD 06910
611 Rockville Pike #100
Rockville, MD 20852
Tel. 301-804-3385
Fax 301-838-1954
rhilllman@siwpc.com
Attorney for Defendant
SAMUEL I WHITE PC

## CERTIFICATE OF SERVICE

I hereby certify on this 19th day of February 2019, that a copy of the foregoing Motion to Dismiss (or in the alternative Motion for Summary Judgment), Memorandum in Support of Motion to Dismiss and exhibits were served by U.S. Mail, postage prepaid, first class and/or electronically via CM/ECF to the following:

Renee L. McCray
109 Edgewood Street
Baltimore, Maryland 21229

/s/ Robert H. Hillman
Robert H. Hillman